STATE OF NORTH CAROLINA v. ERNEST ELDON WOOD ALIAS JOHNNY JOHNSON ALIAS WILLIAM ARTHUR ARNOLD ALIAS CHARLES WATTS

No. 65

(Filed 11 December 1974)

**1. Burglary and Unlawful Breakings § 1— burglary defined**

To sustain a conviction of burglary in either the first or second degree it must appear that the defendant broke into and entered a dwelling or sleeping apartment during the nighttime with intent to commit a felony therein; if the burglarized dwelling is occupied, the crime is burglary in the first degree, but if it is unoccupied, the crime is burglary in the second degree.

State v. Wood

2. **Burglary and Unlawful Breakings § 3— burglary — time of crime — sufficiency of allegation**

    Although the common law required a burglary indictment to allege the hour the crime was committed, today it is sufficient to aver that the crime was committed in the nighttime.

3. **Burglary and Unlawful Breakings § 5— first degree burglary — entry during nighttime — sufficiency of evidence**

    The State's evidence in a first degree burglary case was sufficient to support a jury finding that the breaking and entering occurred during the nighttime where it tended to show that defendant told officers that he entered the victim's motel room while the shower was running and that he left town "that night" for California, and that the victim took a shower at 11:00 p.m. on the night in question.

    Chief Justice BOBBITT not sitting.

APPEAL by defendant from *Braswell, J.*, 10 June 1974 Criminal Session, Superior Court of CUMBERLAND.

In a bill containing two counts defendant was indicted for (1) first degree burglary and (2) felonious larceny.

The first count charged that on 20 November 1971, "during the nighttime between the hours of 11:00 p.m. and 6:00 a.m.," Ernest Eldon Wood, alias Johnny Johnson, alias William Arthur Arnold, alias Charles Watts, with the felonious intent to steal, take and carry away the chattels of William A. Arnold, did feloniously break and enter room 323 of the Downtowner Motel in Fayetteville, North Carolina, which room was used as a sleeping apartment and then actually occupied by William A. Arnold.

The second count charged that on 20 November 1971 in Fayetteville, North Carolina, Ernest Eldon Wood (aliases omitted here), with the intent to steal, feloniously broke into and entered room 323 of the Downtowner Motel at a time when the room was occupied by William A. Arnold, and did feloniously steal, take and carry away $150.00 in money, a man's gold Gruen watch, an American Express credit card issued to William A. Arnold, and one 1972 Buick automobile, serial number 4D37H26105179, the personal property of William A. Arnold of the value of $3,200.00.

The State's evidence tends to show the facts summarized below:

On 20 November 1971, William A. Arnold, a resident of Tucson, Arizona, and a field service engineer for an electrical

corporation providing service and training to the Army, was the only occupant of room 323 at the Downtowner Motel in Fayetteville. He had been in the room for about two weeks. At approximately 11:00 p.m. Mr. Arnold took a shower and went to bed after folding the bedspread "down to the foot of the bed." When he went to sleep his Gruen watch, worth about $50.00, his billfold containing about $150.00 in cash, a cashier's check for $425.00 made payable to William A. Arnold, an American Express credit card, his Arizona driver's license, and the car keys to a two-door, 1972 Buick Sky Lark were on the nightstand. The Buick automobile, which carried Pennsylvania license plates, was leased to Arnold's employer, and he had it with him at the motel. When Arnold went to bed the motel room door, which locked automatically, was closed. The window was also closed.

When he awoke the next morning at approximately 7:30, Arnold noticed that his billfold, watch, and car keys were gone. The bedspread was in the area toward the bathroom; it had been moved approximately fifteen feet. The door to the room was closed. The 1972 Buick Sky Lark was also gone. Arnold had given no one permission to come into his room or to take the automobile.

Arnold immediately reported the thefts to the motel management and to the Fayetteville Police Department, which sent officers to investigate. He also reported the theft of the Buick automobile to the FBI for the reason that it contained property belonging to the government.

On 7 June 1973, Donald McMullen, a special agent for the FBI and two other agents (Yates and Thom) assigned to the Los Angeles FBI office, talked with defendant in the Los Angeles County Jail, where he was being detained upon a "burglary and weapons charge." At that time these agents were unaware of the events which had occurred in Fayetteville on 20 November 1971. They had come to question defendant about his identity and certain other charges they thought might be pending against him in Los Angeles and North Carolina.

Before permitting Agents McMullen and Yates to testify before the jury as to the statement which defendant made to them, Judge Braswell conducted a *voir dire*, on which the testimony of Agent McMullen tended to establish the following facts:

After Agents McMullen, Yates, and Thom had identified themselves to defendant as FBI agents and shown him their

credentials, McMullen advised him of his constitutional rights in the words of the Miranda formula. Defendant then informed the agents that he had finished high school; that he could read and knew his rights. Notwithstanding, they had him read aloud a portion of the FBI form entitled "Interrogation Advice of Rights, Your Rights." After doing so, defendant said that he wished to talk to the agents and that he did not want a lawyer at that time. He then signed a "Waiver of Rights" using the name "William Arthur Arnold," and the three agents witnessed his signature. No threats or promises of any kind were made to defendant, and the agents detected no odor of alcohol about defendant and no evidence that he was under the influence of any drug or stimulant.

At the time the agents interviewed defendant they had with them "an FBI flyer." This was an identification order containing a photograph which Agent McMullen recognized as being that of defendant. The name on the flyer was Ernest Eldon Wood, but it showed the following aliases: John Junior Johnson, Charles Arnold Rivenbark, Charles Arnold Watts, and Butch. Before McMullen had asked defendant his name, defendant told him it was William Arthur Arnold, and that he had been born on 30 May 1939 at Tucson, Arizona. When McMullen showed him the flyer, defendant looked at the picture and said, "That is me." He also said he did not know that "one of these had been put out." After the interview McMullen asked defendant if he still had the scars shown on the flyer. Defendant showed him the scars.

Defendant offered no evidence upon the *voir dire*. At the conclusion of the State's evidence Judge Braswell found as a fact (1) that during McMullen's interview with defendant he used the name William Arthur Arnold; and (2) that defendant's statements to the FBI agents were freely and voluntarily given after he had been warned of his constitutional rights in full conformity with all the requirements "currently known to the law."

Before the jury McMullen repeated in substance the testimony he had given on *voir dire*. In addition he testified that defendant gave him and the other two FBI agents the following account of his activities since October 1971:

Defendant came to Fayetteville in October 1971 from Louisiana. From then until the latter part of November 1971

he sojourned in Fayetteville at a "boarding room" under the name of Johnny Johnson. During that time he sustained himself by committing several burglaries. Shortly after his arrival in Fayetteville, he had walked through the Downtowner Motel and "observed a key in a room." He took it with the idea of returning later to remove "certain items from the room" and, for about two weeks, he observed the occupant of the room coming and going. Thereafter defendant was in his aunt's cafe in Fayetteville when two men came in and inquired for Johnny Johnson. He thought they were looking for him "and that he should leave town." At that time he decided to use the motel key.

Defendant then went to the Downtowner Motel and entered the room from which he had taken the key. "He said he went to the motel after nighttime, after the sun had gone down." When he entered the room he knew it was occupied because he thought he heard a shower running. From a dresser he took a watch, some money, a billfold, and a set of car keys. Upon leaving the room (defendant said) he used the car keys "that night" and proceeded out of town. He drove the 1972 Buick Sky Lark to Hollywood, California, where he abandoned the automobile. Taking advantage of the necessary identifications contained in the billfold, defendant assumed the name of William Arthur Arnold because "they were nearly the same age and the same physical description." He had used "that identification until he was picked up in June of 1973."

At the end of the interview defendant told the FBI agents that his real name was Ernest Eldon Wood; that he had also used the name Charles Arnold Rivenbark, Charles Arnold Watts, Johnny Johnson, and William Arthur Arnold; that he was born on 30 April 1944 in Fayetteville. He showed McMullen three small scars on the inside of his left wrist and a three-inch scar across his inner right palm. After the interview with defendant, McMullen reported defendant's statement by telephone to W. A. Newsom, who was then a member of the Fayetteville Police Department.

Mr. Ray Davis, an agent of the North Caroina State Bureau of Investigation, testified that about midnight on Friday, 19 November 1971, he and Captain Studer of the Fayetteville Police Department, went to a restaurant which was operated by Mrs. Geneva Grice, and inquired of her manager if Johnny Johnson was employed there. At that time they observed two white males seated on the right side of the restaurant as they

went in, but the officers paid no particular attention to them. They had no picture of Johnny Johnson, and were able to obtain no information about him at the cafe.

Defendant offered no evidence. At the conclusion of the State's evidence, he moved to nonsuit each count in the bill of indictment upon the ground that "there was no evidence of a break-in" and that "there was no evidence that any entry was made during the nighttime." The motion was overruled and defendant excepted.

The jury returned a verdict finding defendant guilty as charged in each count. The crimes charged having been committed prior to 18 January 1973, the date of the decision in *State v. Waddell,* 282 N.C. 431, 194 S.E. 2d 19, upon defendant's conviction of first degree burglary, the court imposed the sentence of life imprisonment, from which defendant appealed to the Supreme Court under G.S. 7A-27(a). His appeal from the ten-year sentence imposed for felonious larceny was certified for initial appellate review by the Supreme Court under G.S. 7A-31(a).

*James H. Carson, Jr., Attorney General, and Lester V. Chalmers, Jr., Assistant Attorney General, for the State.*

*James C. MacRae for defendant.*

SHARP, Justice.

Defendant's assignments of error raise only the question whether the trial judge erred in refusing to grant his motions for nonsuit. In his brief, however, defendant advances no reason or argument in support of his exception to the judge's refusal to dismiss the charge of felonious larceny. He states the question presented to be "whether or not there was sufficient evidence of defendant's guilt of the offense of first degree burglary to be submitted to the jury."

[1] To sustain a conviction of burglary in either the first or second degree it must appear that the defendant broke into and entered a dwelling or sleeping apartment during the nighttime with intent to commit a felony therein. If the burglarized dwelling is occupied the crime is burglary in the first degree; if unoccupied, it is burglary in the second degree. G.S. 14-51; *State v. Frank,* 284 N.C. 137, 200 S.E. 2d 169 (1973) ; *State v. Cox,* 281 N.C. 131, 187 S.E. 2d 785 (1972).

Defendant contends that the burglary charge should have been dismissed because the State's proof does not conform to the allegation in the indictment that the breaking and entering occurred "during the nighttime between the hours of 11:00 p.m. and 6:00 a.m."; that the time of the entry is left to conjecture; and that the State offered no evidence as to when nighttime ended and daylight began on 20 November 1971. This contention is without merit.

[2] Although the common law required an indictment for burglary to allege the hour the crime was committed, today "it is sufficient to aver that the crime was committed in the nighttime." 13 Am. Jur. 2d, *Burglary* § 34 (1964). The allegation is sustained by proof beyond a reasonable doubt that the breaking and entering occurred "during the nighttime," and the time of the offense may be proved by circumstantial evidence. 12 C.J.S., *Burglary* §§ 13, 60 (1938). *See State v. Frank, supra; State v. Whit,* 49 N.C. 349 (1857).

[3] The State's evidence was sufficient to establish that defendant broke into Mr. Arnold's bedroom sometime after 11:00 p.m. and took, among other things, Arnold's driver's license and the keys to the Buick automobile in which he left Fayetteville *"that night"* for California. Defendant's statement, that at the time he entered the motel room he knew it was occupied because he thought he heard a shower running, is evidence tending to show the burglary occurred shortly after 11:00 p.m., the time Arnold testified he took a shower. However, SBI Agent Davis testified that his inquiry at the cafe for Johnny Johnson was made about midnight. This was the occurrence which prompted defendant's decision to burglarize the motel room and then leave town. In any event, defendant himself said that, after entering the motel room, he left Fayetteville *that night.*

In our view the evidence set forth in the preliminary statement supports the verdict rendered and is consistent only with a breaking and entering during the nighttime. In defendant's trial we find

No error.

Chief Justice BOBBITT not sitting.