STATE OF NORTH CAROLINA v. SAM FRANK MANDINA

No. 8710SC631

(Filed 1 November 1988)

1. **Criminal Law § 124.1— improper indictment number on judgment—defendant not entitled to arrest of judgment**

   The trial court's misrecital of the indictment number in the judgment and commitment did not constitute grounds for arrest of judgment, since defendant clearly had notice of the crime charged and was able to prepare his defense.

2. **Burglary and Unlawful Breakings § 3— allegations as to time of offense—sufficiency of indictment**

   Although nighttime is clearly "of the essence" of the crime of burglary, an indictment for burglary is sufficient if it avers that the crime was committed in the nighttime; therefore, failure to allege the hour the crime was committed or the specific year is not grounds for arrest of judgment, nor will the judgment be arrested because the indictment imperfectly refers to the hour of midnight as "12:00 a.m." N.C.G.S. § 15-155.

3. **Larceny § 4— felony larceny—sufficiency of indictment**

   The allegation in the indictment that the larceny was committed "pursuant to a violation of N.C.G.S. § 14-51" was in the language of N.C.G.S. § 14-72(b) and was sufficient to apprise defendant that he was charged with larceny punishable as a felony because it was committed pursuant to a burglary, and the indictment was not required to set forth facts supporting the elements of common law burglary.

4. **Constitutional Law § 30— criminal record and parole record of co-conspirator— no right to discovery**

   Defendant was not prejudiced by the trial court's denial of his motion for production of several items, including the criminal record, parole records and reports, and results of handwriting samples of an alleged co-conspirator and chief witness for the State, since neither N.C.G.S. § 15A-903 nor the common law gives a defendant the right to discover the criminal record of a State's witness; the same rule should apply to a witness's parole record; and the exclusion of the handwriting evidence, even if error, was not prejudicial where defendant did not allege how such evidence was material to his case.

5. **Criminal Law § 15— change of venue—trial court's order a nullity—no prejudice to defendant**

   Though the trial court erred in entering out of session its order denying defendant's motion for change of venue, dated 8 August 1986, *nunc pro tunc* to 23 April 1986, and the order was a nullity, the effect was the same as a denial of defendant's motion, and he failed to show prejudice thereby.

6. **Criminal Law § 15.1— pretrial publicity—failure to show prejudice—denial of change of venue proper**

   Defendant was not prejudiced by the trial court's denial of his motion for a change of venue based on pretrial publicity where the newspaper stories in

State v. Mandina

question were noninflammatory accounts of a general factual nature about the arrest or trials of defendant's alleged co-conspirators, the testimony of the State's chief witness, police efforts to extradite defendant from Tennessee, descriptions of the articles stolen, and names, addresses, and dates of the break-ins; ten of the news stories did not mention defendant by name; the most recent articles appeared more than nine months prior to defendant's trial; Wake County is a large, urban community serviced by many different media sources reporting on a vast range of important issues; and the record contained no evidence of venire prejudice.

7. **Searches and Seizures § 18— search of vehicle driven by defendant—consent given by owner—admissibility of evidence seized**

The trial court did not err in denying defendant's motion to suppress fiber and other evidence obtained by F.B.I. agents from an automobile allegedly driven by defendant from North Carolina to Missouri after the burglaries in question were committed where the evidence tended to show that defendant had paid $3,500 for the vehicle and was to pay the balance of $500 at which time title was to be transferred to him; at the time the vehicle was searched, it was at the seller's dealership for minor repairs; title and registration were in the name of the dealership; and the owner of the dealership gave both oral and written consent to the search of the vehicle.

8. **Criminal Law § 42.6— fibers seized from car driven by defendant—no "chain of custody" problem raised**

Defendant in a prosecution for burglary, larceny, safecracking, and conspiracy did not raise a "chain of custody" problem with regard to fiber evidence seized from a car allegedly driven by defendant where he alleged that the State failed to secure the vehicle, but there was no allegation that the State could not show continuous possession or safekeeping of, or could not properly identify, the evidence to be introduced.

9. **Criminal Law § 95.2— jury instruction—lapsus linguae—defendant not prejudiced**

The trial court's limiting instruction to the jury regarding evidence of burglaries other than those for which defendant was on trial which included the statement, "you may consider only evidence of other offenses for any purpose other than these which I have just explained to you," was not prejudicial to defendant, since omission of the word "not" after the word "may" was a lapsus linguae which was not called to the court's attention, was not misleading and did not constitute reversible error.

10. **Burglary and Unlawful Breakings § 5.8— breaking and entering and larceny from residence—lack of consent—sufficiency of evidence**

In a prosecution of defendant for burglary and larceny, there was no merit to defendant's contention that there was no direct evidence of lack of consent, and he was therefore entitled to have the judgment vacated and a new trial, since the State presented evidence that owners of the residence broken into were out of town at the time of the crime; the house was forcibly entered between 28 and 30 January 1983; and the house was ransacked and various items were missing.

APPEAL by defendant from *Farmer, Robert L., Judge.* Judgments entered 18 December 1986 in Superior Court, WAKE County. Heard in the Court of Appeals 9 December 1987.

*Attorney General Lacy H. Thornburg by Special Deputy Attorney General James B. Richmond and Assistant Attorney General John F. Maddrey for the State.*

*John T. Hall for defendant appellant.*

COZORT, Judge.

Defendant was tried, along with codefendant Gary Gene Williams, not a party to this appeal, on six counts of second-degree burglary, six counts of felonious larceny, one count of safecracking, and one count of conspiracy. Except for the conspiracy charge, which alleged a conspiracy to commit burglary between 10 June 1982 and 26 February 1983, all of the charges stemmed from six break-ins occurring on the weekend of 28, 29, and 30 January 1983. At trial, the State's evidence consisted principally of the testimony of William Nobe, an alleged co-conspirator who testified pursuant to a plea arrangement. Nobe testified that defendant and other individuals came to Raleigh from Missouri on several occasions, including the January weekend in question, when they burglarized homes in expensive neighborhoods and stole items of sterling silver, jewelry, guns, and other valuable antiques. The owners of the residences burglarized on the January weekend testified, as did victims of burglaries that took place in August of 1982 and February of 1983. The State also presented various items of physical evidence, including fiber evidence seized from a 1978 Oldsmobile Cutlass allegedly driven by defendant to Missouri following the burglaries, which was compared with fibers taken from a Raleigh motel where defendant allegedly stayed.

From judgments imposing sentences totaling 153 years in prison, following conviction on all counts, defendant appeals. We affirm.

Defendant presents fifteen assignments of error, which, he contends, entitle him to a new trial.

[1] Three assignments of error challenge the sufficiency of several of the indictments under which defendant was tried. First,

defendant assigns as error the entry of judgment and commitment for conspiracy because the judgment and commitment refer to a case numbered 85CRS73210, whereas the bill of indictment is numbered 85CRS73610. He argues that, absent a valid bill of indictment numbered 85CRS73210, he is entitled to an arrest of judgment on the conspiracy charge and, further, that without the umbrella charge of conspiracy, joinder of offenses occurring on separate dates was improper. We find no error.

Defendant was charged with conspiracy under a proper bill of indictment numbered 85CRS73610. He alleges no defects in that bill. Thus, there is no "absence" of a valid charge of conspiracy as defendant claims. Furthermore, the record indicates that the parties conducted pretrial and trial proceedings under the impression that the bill of indictment charging defendant with conspiracy was numbered 73210 rather than 73610. Defendant's waiver of arraignment and plea of not guilty referred to 73210, as did his other motions, including motion for a change of venue and motion to sever. Defendant clearly had notice of the crime charged and was able to prepare his defense. *State v. Hicks*, 86 N.C. App. 36, 39, 356 S.E. 2d 595, 597 (1987). Therefore, the trial court's misrecital of the indictment number did not prejudice defendant and does not constitute grounds for arrest of judgment. The assignment of error is overruled.

[2]   Defendant also contends that he is entitled to arrest of judgment on the burglary charges on the ground that the indictments were fatally defective because of errors or omissions as to the date or time of the offense alleged. Each count of burglary charged defendant with breaking and entering an identified dwelling "during the nighttime between the hours of 8:30 pm and 12:00 am" on a specific month, day, and year—except for case numbered 83CRS 39436A, which alleges that the burglary occurred on "the 28th day of January 19--." Defendant contends that there is no hour of "12:00 am" as opposed to "12:00 midnight" and that that error, as well as the omission of year in 83CRS39436A, renders each indictment invalid on its face. This contention has no merit.

N.C. Gen. Stat. § 15-155 provides: "No judgment upon any indictment for felony or misdemeanor . . . shall be stayed or reversed . . . for omitting to state the time at which the offense was committed in any case where time is not of the essence of the

offense, nor for stating the time imperfectly . . . ." Although *nighttime* is clearly "of the essence" of the crime of burglary, an indictment for burglary is sufficient if it avers that the crime was committed in the nighttime. *State v. Wood,* 286 N.C. 248, 254, 210 S.E. 2d 52, 55 (1974). Therefore, failure to allege the hour the crime was committed, *id.,* or the specific year, *see State v. Hawkins,* 19 N.C. App. 674, 199 S.E. 2d 746 (1973), is not grounds for arrest of judgment. Similarly, the judgment will not be arrested because the indictment imperfectly refers to the hour of midnight as "12:00 am." We therefore overrule this assignment of error.

[3] There is likewise no merit to defendant's argument that the indictments for felonious larceny are invalid for failure to allege the essential elements of the offense. Each larceny count, which follows the corresponding second-degree burglary count in each of the six bills of indictment, is in the following language:

> AND THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the (date of the offense) in Wake County Sam Frank Mandina unlawfully and wilfully did feloniously steal, take and carry away (see xeroxed copy attached hereto as Exhibit A and incorporated herein by reference), the personal property of (name of owner-victim) pursuant to a violation of Section 14-51 of the General Statutes of North Carolina. This larceny was in violation of the following law: N.C.G.S. 14-72(b)(2).

Defendant appears to argue that, since he was tried and convicted of larceny pursuant to a burglary, the indictment was required to set forth not only facts supporting the elements of common law larceny and the statutory basis for punishment as a felony, but also facts supporting the elements of common law burglary. The counts in question, however, charge defendant with felony larceny, not burglary; the burglary charges are set forth in separate counts. N.C. Gen. Stat. § 15A-924(a)(5) states that a criminal pleading must contain "[a] plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." In order to charge a defendant with *felony* larceny, without regard to the

value of the property stolen, the bill of indictment must contain, in addition to the elements of common law larceny, one or more of the following statutory elements set forth in § 14-72(b):

(1) From the person;

(2) Committed pursuant to a violation of G.S. 14-51, 14-53, 14-54 or 14-57;

(3) Of any explosive or incendiary device or substance;

(4) Of any firearm; or

(5) Of any record or paper in custody of the N.C. Archives.

*See* N.C. Gen. Stat. § 14-72(b) (1987); *State v. Cleary,* 9 N.C. App. 189, 192, 175 S.E. 2d 749, 751 (1970). Section 14-72 "relates solely to punishment for the separate crime of larceny," *State v. Brown,* 266 N.C. 55, 63, 145 S.E. 2d 297, 303 (1965) (Bobbitt, J., concurring), and does not change the nature of the common law offense. *State v. Smith,* 66 N.C. App. 570, 576, 312 S.E. 2d 222, 226, *disc. rev. denied,* 310 N.C. 747, 315 S.E. 2d 708 (1984). The allegation that the larceny was committed "pursuant to a violation of G.S. 14-51" is in the language of § 14-72(b) and was sufficient to apprise defendant that he was charged with larceny punishable as a felony because it was committed pursuant to a burglary. This assignment of error is overruled.

Defendant further assigns as error the trial court's pretrial rulings on a motion for discovery, a motion for change of venue, and two motions, a motion to suppress and a motion in limine, aimed at excluding fiber evidence taken from the vehicle allegedly driven by defendant following commission of the burglaries. We note at the outset that defendant's brief does not comply with Rule 28(b)(5) of the Rules of Appellate Procedure, as defendant has failed to state separately each question presented followed by the assignment of error and exception pertinent to the question. Nonetheless, we have elected, in our discretion, to consider the arguments.

[4] The record discloses that prior to trial defendant made a motion for the production of several items, including the criminal record, parole record and reports, and results of handwriting samples of William Nobe, an alleged co-conspirator and a chief

State v. Mandina

witness for the State. The motion was denied. We find no prejudicial error.

N.C. Gen. Stat. § 15A-903 sets forth the types of information discoverable from the State. Neither this statute nor the common law gives a defendant the right to discover the criminal record of a witness for the State. *State v. Ford,* 297 N.C. 144, 148, 254 S.E. 2d 14, 17 (1979). We think the same rule should apply to a witness's parole record.

The discovery statute would, however, allow a defendant access to reports of handwriting analysis made in connection with a case. *See* N.C. Gen. Stat. § 15A-903(e) (1987). It was arguably error to deny defendant's motion to produce results of analyses of Nobe's handwriting. Nevertheless, defendant has made no showing that the trial court's ruling affected the preparation or presentation of his defense, to his prejudice, as required by N.C. Gen. Stat. §§ 15A-1442, -1443 (1987). Specifically, defendant has not alleged how the handwriting analysis report was material to his case, or whether or how the State intended to use the information at trial. Defendant has not directed us to any portion of the transcript showing that the State introduced or used this evidence. We note, however, that at trial counsel for codefendant Williams introduced a carbon copy of the report, apparently in an effort to raise doubt about the truthfulness of Nobe's testimony that he had signed motel registration cards on weekends when the burglaries were committed. If the value of the report was limited to impeachment evidence, we fail to see how defendant was prejudiced. The information contained in the report was made available to codefendant's counsel and was in fact put before the jury. Furthermore, the S.B.I agent who prepared the report testified that the analysis was inconclusive as to authorship. Thus, the report's value in impeaching Nobe's direct testimony is doubtful. The assignment of error is overruled.

Next, defendant assigns as error the trial court's denial of a pretrial motion for change of venue. In his motion, defendant argued that unfavorable pretrial media publicity and the fact that many of State's witnesses were prominent Wake County citizens, including a superior court judge, mandated transfer from Wake County. Attached to his motion were twenty-three newspaper ar-

ticles that appeared in newspapers of general circulation in Wake County.

N.C. Gen. Stat. § 15A-957 provides for change of venue when the trial court "determines that there exists in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial . . . ." The burden of proof in a hearing on a motion for change of venue is on the defendant. *State v. Brown*, 13 N.C. App. 261, 185 S.E. 2d 471 (1971), *cert. denied*, 280 N.C. 723, 186 S.E. 2d 925 (1972). A ruling on a motion for change of venue is addressed to the discretion of the trial court and will not be disturbed on appeal unless a manifest abuse of such discretion is shown. *State v. Boyd*, 20 N.C. App. 475, 201 S.E. 2d 512, *appeal dismissed*, 285 N.C. 86, 203 S.E. 2d 59, *cert. denied*, 419 U.S. 860, 42 L.Ed. 2d 95, 95 S.Ct. 111 (1974).

[5]  Before examining the merits of defendant's motion, we must consider the trial court's procedural error in entering out of session its order denying the motion for change of venue, dated 8 August 1986, *nunc pro tunc* to 23 April 1986. Unless an oral ruling is made in open court, *State v. Horner*, 310 N.C. 274, 279, 311 S.E. 2d 281, 285 (1984), an order substantially affecting the rights of parties to a cause pending in the superior court at a term must be made in the county and at the term when and where the question is presented, and, except by agreement of the parties, may not be entered otherwise. *State v. Boone*, 310 N.C. 284, 287, 311 S.E. 2d 552, 555 (1984). An order entered contrary to this rule is a nullity, *id.* at 286, 311 S.E. 2d at 555, and entering an order *nunc pro tunc* does not change this result. *Thompson v. Gennett*, 255 N.C. 574, 122 S.E. 2d 205 (1961). However, while prejudice to the defendant is not a factor affecting the nullity of the order, *State v. Boone*, 310 N.C. at 288, 311 S.E. 2d at 556, it is a factor determinative of defendant's right to a new trial. *See State v. Partin*, 48 N.C. App. 274, 283, 269 S.E. 2d 250, 255, *disc. review denied and appeal dismissed*, 301 N.C. 404, 273 S.E. 2d 449 (1980), holding that failure to rule on defendant's motion for a change of venue was, in effect, a denial of that motion, but that defendant had shown no prejudice. We therefore turn to the merits of defendant's motion.

[6]  After carefully examining the motion, including the news stories attached to it, we conclude that defendant was not preju-

diced by having his case heard in Wake County. While four of the news stories refer to "the Mandina Gang," the stories are noninflammatory accounts of a general factual nature about the arrest or trials of defendant's alleged co-conspirators, the testimony of State's witness Nobe, police efforts to extradite defendant from Tennessee, descriptions of the articles stolen, or names, addresses, and dates of the break-ins. Ten of the news stories do not mention defendant by name. The most recent articles appeared more than nine months prior to defendant's trial. We also note that Wake County is a large, urban community serviced by many different media sources reporting on a vast range of important issues. Finally, the record contains no evidence of venire prejudice. Defendant must do more than present evidence of pretrial publicity; he must "go forward with evidence tending to affirmatively show that prospective jurors in his case were reasonably likely to base their verdict upon conclusions induced by outside influences . . . ." *State v. McDougald*, 38 N.C. App. 244, 249, 248 S.E. 2d 72, 78 (1978), *disc. review denied and appeal dismissed*, 296 N.C. 413, 251 S.E. 2d 472 (1979). The record does not contain the *voir dire* examination of the jury, and we are thus unable to find that any juror had prior knowledge or opinion about the case, or that defendant had to accept any juror objectionable to him. *See State v. Harrill*, 289 N.C. 186, 191, 221 S.E. 2d 325, 328-29, *death penalty vacated*, 428 U.S. 904, 49 L.Ed. 2d 1211, 96 S.Ct. 3212 (1976). We also note that, unlike the defendant in *State v. Boone*, defendant here did not object to the trial court's entering the order *nunc pro tunc* or renew his motion at any time prior to trial. The assignment of error is overruled.

[7] Next, defendant assigns error to the trial court's denial of his motion to suppress fiber and other evidence obtained by F.B.I. agents from a 1978 Oldsmobile Cutlass. The car was located in Missouri and allegedly had been driven by defendant from North Carolina after the burglaries in question were committed. In support of his motion, defendant submitted the affidavit of Crawford, the owner of the car dealership where the vehicle was parked, who stated that defendant had paid $3,500.00 for the vehicle and was to pay the balance of $500.00, at which time title was to be transferred to defendant. He also stated that at the time the vehicle was searched by F.B.I. agents, it was at his dealership for minor repairs, the nature of which he did not recall. However,

State v. Mandina

Crawford also stated that title and registration were in the name of Crawford's business. Defendant contends that the search was a violation of his Fourth Amendment rights because he was the owner of the vehicle and did not consent to the search. We do not agree.

N.C. Gen. Stat. § 15A-221 provides that "a law enforcement officer may conduct a search and make seizures, without a search warrant or other authorization, if consent to the search is given." Section 15A-222 further provides that "[t]he consent needed to justify a search and seizure under G.S. 15A-221 must be given . . . [b]y the registered owner of a vehicle to be searched or by the person in apparent control of its operation and contents at the time consent is given . . . ." N.C. Gen. Stat. § 15A-222 (1987).

Similarly, a search is not unreasonable within the meaning of the Fourth Amendment of the U.S. Constitution or Article I, Section 20, of the N.C. Constitution, when lawful consent to the search is given. *Schneckloth v. Bustamonte,* 412 U.S. 218, 36 L.Ed. 2d 854, 93 S.Ct. 2041 (1973); *State v. McPeak,* 243 N.C. 243, 245, 90 S.E. 2d 501, 503 (1955), *cert. denied,* 351 U.S. 919, 100 L.Ed. 1451, 76 S.Ct. 712 (1956). Our courts have often found that consent given by the owner or person lawfully in control of a vehicle is sufficient to justify a search that yields evidence used against a non-consenting passenger. *See, e.g., State v. Hamilton,* 264 N.C. 277, 285, 141 S.E. 2d 506, 512 (1965), *cert. denied,* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936 (1966); *State v. Dawson,* 262 N.C. 607, 138 S.E. 2d 234 (1964); *State v. McPeak,* 243 N.C. 243, 90 S.E. 2d 501 (1955), *cert. denied,* 351 U.S. 919, 100 L.Ed. 1451, 76 S.Ct. 712 (1956); *State v. Jefferies and State v. Person,* 41 N.C. App. 95, 254 S.E. 2d 550, *cert. denied,* 297 N.C. 614, 257 S.E. 2d 438 (1979). Furthermore, a defendant who has no ownership or possessory interest in the vehicle searched has no "legitimate expectation of privacy" in that vehicle, and, accordingly, no standing to object to the search. *State v. Melvin,* 53 N.C. App. 421, 425, 281 S.E. 2d 97, 100 (1981), *cert. denied,* 305 N.C. 762, 292 S.E. 2d 578 (1982).

Although defendant alleges ownership, he was not the registered owner. At the suppression hearing, the F.B.I. agent who conducted the search testified that Crawford stated that he owned the vehicle and gave both oral and written consent to the search of the vehicle. The written consent was placed in evidence,

as were a bill of sale that contained no purchaser signature and a temporary permit application in Crawford's name. Based on this evidence, the trial court found that Crawford was the owner of the vehicle and had the authority to and did consent to the search. Therefore, the court concluded that defendant had no standing to object to the search. This conclusion is supported by the findings, which are based on competent evidence and will not be disturbed on appeal. *Cogdill v. North Carolina State Highway Comm'n*, 279 N.C. 313, 182 S.E. 2d 373 (1971). Accordingly, the assignment of error is overruled.

[8]  By another assignment of error, defendant contends that the trial court erred in denying his oral motion in limine to suppress the fiber evidence taken from the 1978 Oldsmobile Cutlass, because there was "no clean chain of custody." Defendant anticipated, as was the case, that the State would introduce fiber evidence during the testimony of its expert witness, who would testify that some of the fibers taken from the trunk carpet and rear floor mat of the vehicle were consistent with fibers taken from a burglarized home and that other fibers matched those taken from hallway carpet at the motel where defendant allegedly stayed. We find no error.

On *voir dire*, the F.B.I. agent who seized the mat and carpet testified that when he located the vehicle on 4 March 1983, he did not seize any evidence but told Crawford to secure the vehicle, and that Crawford moved the vehicle into the garage. However, when the agent returned to collect evidence on 7 March 1983, the vehicle had been moved by Crawford's son or brother to make room in the garage. Defendant argues that this failure to secure the vehicle precluded a show of chain of custody necessary for introduction of the fiber evidence.

We first note that "any weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility." *State v. Campbell*, 311 N.C. 386, 389, 317 S.E. 2d 391, 392 (1984). However, defendant's argument, strictly analyzed, does not raise a chain of custody problem. There is no allegation that the State could not show continuous possession or safekeeping of, or could not properly identify, the evidence to be introduced. Rather, defendant argues that the *source* of the evidence, the vehicle, had been contaminated by the possible introduction of

fibers by third parties due to the State's failure to secure the vehicle. In our view, as long as the State laid proper foundation authenticating the evidence as the fibers actually seized from the vehicle, *see State v. Taylor*, 56 N.C. App. 113, 114, 287 S.E. 2d 129, 130 (1982), defendant's argument goes to the weight of the evidence rather than to the admissibility of it. The assignment of error is overruled.

**[9]** Defendant also assigns error to the trial court's limiting instruction to the jury regarding evidence of burglaries other than those for which defendant was on trial. The instruction given by the trial court was as follows:

> THE COURT: Members of the jury, the Court would like to give you a short instruction at this time concerning evidence that may be presented, either this afternoon or some time after today.
>
> It's my understanding that some evidence may be presented during the trial of this case of the commission of offenses other than the six incidents occurring in January of 1983.
>
> Such evidence, if offered by the State, may be considered by you in determining whether or not the defendants were participants in a conspiracy to commit burglary as alleged, with respect to the six charges of burglary and larceny, and the charge of safecracking, you may not consider evidence of other crimes as evidence of bad character or that the defendants acted in conformity therewith.
>
> However, you may consider such evidence of other offenses, if you find it to be probative of the defendants' motive, opportunity, intent, preparation, plan, knowledge, or identity as the perpetrators of the offenses which they are charged with committing in January of 1983.
>
> You may consider any evidence of other offenses for any purpose other than these which I have just explained to you.

Defendant argues that the court's omission of the word "not" after "may" in the last sentence constitutes reversible error. The proper action, however, would have been to call the trial court's attention to its misstatement; this the defendant did not do. Nevertheless, we view the court's omission as a mere "lapsus linguae"

which, in light of the whole instruction given, was not misleading and does not constitute reversible error, particularly since the judge's final charge to the jury contained no misstatement. *See State v. Craig*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247, 104 S.Ct. 263 (1983). Therefore, this assignment of error is overruled.

Defendant also assigns as error the admission of testimony from a St. Louis, Missouri, police officer about statements made by codefendant Williams. There is no merit to this assignment: There is no allegation that the joint trial was improper, *see* N.C. Gen. Stat. § 15A-926(b) (1987), and no evidence that codefendant's statement implicated defendant. *State v. Fox*, 274 N.C. 277, 291, 163 S.E. 2d 492 (1968). Furthermore, the judge instructed the jury not to consider Williams' statements as to defendant. *See State v. Lynch*, 266 N.C. 584, 146 S.E. 2d 677 (1966). The assignment of error is overruled.

[10] Defendant also assigns error to the verdict and entry of judgment in 83CRS39390, charging defendant with burglary and larceny at the Cottle residence. Defendant contends that, because there is no direct evidence of lack of consent, he is entitled to a vacating of this judgment and a new trial. We disagree.

Lack of consent is an essential element of the crime of larceny. *State v. Jackson*, 75 N.C. App. 294, 330 S.E. 2d 668 (1985). While the State must show the lack of consent by sufficient competent evidence, this evidence may be either direct or circumstantial in nature, if "the circumstances [raise] a logical inference of the fact to be proved and not just a mere suspicion or conjecture." *State v. Boomer*, 33 N.C. App. 324, 327, 235 S.E. 2d 284, 286, *cert. denied*, 293 N.C. 254, 237 S.E. 2d 536 (1977). *See also State v. Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974).

The State presented evidence that the Cottles, owners of the residence, were out of town at the time of the crime and that their daughter periodically checked the house to make sure it was secure; that when she checked the house on Friday, 28 January 1983, all doors and windows were locked; that when she checked the house on Sunday, 30 January 1983, the house had been forcibly entered through the basement door and that drawers were standing open, rugs turned over, jewelry cases emptied, silver items disarranged, and jewelry and shotguns were missing. In ad-

dition, Ms. Cottle testified that she had feared a robbery would occur and that before leaving town she had taken most of her valuables out of the house and had left a note for the robbers to "please go away." This evidence, viewed in the light most favorable to the State, *see State v. Porter*, 303 N.C. 680, 281 S.E. 2d 377 (1981), is sufficient to support a finding of lack of consent. *State v. Currie*, 53 N.C. App. 485, 281 S.E. 2d 66 (1981). The assignment of error is overruled.

We have reviewed defendant's remaining assignments of error and find no need to discuss them, except to say that they have no merit. *See State v. Tomblin*, 276 N.C. 273, 277, 171 S.E. 2d 901, 904 (1970).

We conclude that defendant received a fair trial, free from prejudicial error.

No error.

Judges BECTON and EAGLES concur.