IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-144

No. COA20-142

Filed 20 April 2021

Buncombe County, Nos. 17 CRS 87437–38

STATE OF NORTH CAROLINA

v.

JAMES LEROY JACKSON, JR.

Appeal by defendant from judgment entered 8 March 2019 by Judge Peter B. Knight in Buncombe County Superior Court. Heard in the Court of Appeals 10 February 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Asher P. Spiller, for the State.*

*Hynson Law, PLLC, by Warren D. Hynson, for defendant.*

DIETZ, Judge.

Defendant James Jackson appeals his conviction for possession of cocaine with intent to sell or deliver. Jackson argues that he sold two white rocks to an undercover detective who handled them with his bare hands and then placed them into the console area of his car without securing them. Thus, Jackson argues, those white rocks were exposed to potential contaminants and were either inadmissible or so compromised that they could not constitute substantial evidence of the crime.

¶ 2        We reject these arguments. Jackson's concerns about the handling of this physical evidence go to weight and credibility, not admissibility, and the evidence readily was sufficient to send the charge to the jury.

¶ 3        Jackson also contends that the trial court erred by informing the jury that they should have the "goal" of reaching a unanimous verdict. The challenged instruction occurred after the trial court already provided detailed instructions to ensure that jurors understood they were not compelled to reach a unanimous verdict. In light of those instructions, the jury understood that it should deliberate and reach a unanimous verdict if possible but was not compelled to do so. Accordingly, we reject this argument as well and find no error in the trial court's judgment.

## Facts and Procedural History

¶ 4        In 2017, an undercover detective with the Asheville Police Department drove into an apartment complex, displayed some cash, and indicated that he was looking to buy drugs. A woman directed him to Defendant James Jackson. Jackson took the money from the detective and then handed him what the detective described as two "little rocks of crack cocaine." These "rocks" were unpackaged and the detective handled them with his bare hands. When the detective returned to his car, he put the two unpackaged rocks in the console area. The detective then drove back to the police station, put the items in a secure envelope, entered them into the computer system, and then deposited them in the property room drop box, where they stayed until they

were delivered for laboratory testing.

The State charged Jackson with selling a mixture containing cocaine and possession with intent to sell or deliver a mixture containing cocaine. At trial, a forensic scientist testified that the rocks purchased by the detective contained cocaine. The detective also testified that he visually identified the substance as cocaine.

The jury acquitted Jackson of selling cocaine and convicted him of possession with intent to sell or deliver cocaine. The trial court sentenced Jackson to 16 to 29 months in prison. Jackson appealed.

## Analysis

### I.    Sufficiency of evidence of possession of a controlled substance

Jackson first challenges the denial of his motion to dismiss. He contends that the white rocks he sold to the detective were contaminated when the detective handled them with his bare hands, rendering any laboratory testing unreliable. Thus, he argues, there was no substantial evidence that the rocks actually contained cocaine.

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). A trial court properly denies a motion to dismiss if there is substantial evidence that the defendant committed each essential element of the charged offense. *Id.* "Substantial evidence is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

¶ 9 "The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; (3) there must be intent to sell or distribute the controlled substance." *State v. Yisrael*, 255 N.C. App. 184, 187–88, 804 S.E.2d 742, 744 (2017), *aff'd per curiam*, 371 N.C. 108, 813 S.E.2d 217 (2018). Jackson focuses on the second element, arguing that the State's evidence "only raised a suspicion" that the white rocks were cocaine. This is so, Jackson argues, because the detective handled the rocks with his bare hands, admitted to handling cocaine with his bare hands earlier that same day, and admitted to putting the white rocks in the same area of his car that he previously stored other seized cocaine earlier that day. Thus, Jackson argues, the State failed to present sufficient evidence to show that, at the time Jackson sold the white rocks to the officer, those rocks contained cocaine.

¶ 10 To be sure, Jackson's argument is one that a jury could consider when evaluating the weight to give to the laboratory testing, because the detective might have inadvertently contaminated the evidence with cocaine residue from earlier investigations. But these are questions of weight and credibility. The State unquestionably presented sufficient evidence from which a reasonable juror could conclude that the State proved each element of the charged offense. *State v.*

*Blackmon*, 208 N.C. App. 397, 401, 702 S.E.2d 833, 836 (2010). Accordingly, the trial court did not err by denying the motion to dismiss.

## II. Admissibility of controlled substance

¶ 11    Jackson next argues that the trial court plainly erred by admitting the white rocks into evidence because the possibility of contamination prevented the evidence from properly being authenticated under the Rules of Evidence. Jackson acknowledges that he did not object to the admission of this evidence and thus we can review this argument solely for plain error.

¶ 12    "For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* Plain error should be "applied cautiously and only in the exceptional case" where the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

¶ 13    "Rule 901(a) requires that evidence be authenticated by showing that the matter in question is what its proponent claims." *State v. Snead*, 368 N.C. 811, 814, 783 S.E.2d 733, 736 (2016). Thus, before physical evidence is admitted, it "must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." *State v. Campbell*, 311 N.C. 386, 388,

317 S.E.2d 391, 392 (1984). The trial court has "sound discretion in determining the standard of certainty" necessary to satisfy this test. *Id.* at 388–89, 317 S.E.2d at 392.

¶ 14   The possibility that physical evidence has been contaminated does not, by itself, bar that evidence from being authenticated and admitted. In *State v. Mandina*, for example, the State introduced carpet fibers taken from a car used in a burglary. 91 N.C. App. 686, 696–97, 373 S.E.2d 155, 161–62 (1988). The defendant argued that the fibers were inadmissible because, after law enforcement found the car, its owner moved it "to make room in the garage" and officers did not return to seize the car until several days later. Thus, the defendant argued, there was "no clean chain of custody." *Id.*

¶ 15   The Supreme Court rejected this argument, holding that "defendant's argument, strictly analyzed, does not raise a chain of custody problem" *Id.* at 696, 373 S.E.2d at 162. "Rather, defendant argues that the *source* of the evidence, the vehicle, had been contaminated by the possible introduction of fibers by third parties due to the State's failure to secure the vehicle." *Id.* at 696–97, 373 S.E.2d at 162. "In our view, as long as the State laid proper foundation authenticating the evidence as the fibers actually seized from the vehicle, defendant's argument goes to the weight of the evidence rather than to the admissibility of it." *Id.* at 697, 373 S.E.2d at 162 (citation omitted).

¶ 16   The same is true here. Jackson does not argue that the State failed to establish

that the white rocks tested in the laboratory were the ones the detective purchased from Jackson in the undercover drug operation. Instead, Jackson argues that there is a possibility that those white rocks were contaminated when the detective handled them with his bare hands and placed them in an area of his car that may have been exposed to drug residue from earlier undercover activity. Under *Mandina*, these arguments go "to the weight of the evidence rather than to the admissibility of it." *Id*. We therefore find no error, and certainly no plain error, in the trial court's admission of the challenged evidence.

### III.    Jury instructions on further deliberations

Lastly, Jackson asserts that the trial court's instructions that the jury resume their deliberations "with the goal of reaching a unanimous decision as to each charge" were unduly coercive.

We review this issue de novo. *State v. Gettys*, 219 N.C. App. 93, 101, 724 S.E.2d 579, 586 (2012). Jury instructions encouraging the jury to continue deliberations and reach a unanimous verdict often are referred to as *Allen* charges because the doctrine originated from *Allen v. United States*, 164 U.S. 492, 501–02 (1896).

In North Carolina, *Allen* charges are governed by a statute. N.C. Gen. Stat. § 15A-1235. When a jury indicates that it is unable to reach a unanimous verdict, the trial court can instruct the jury that: "(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done

without violence to individual judgment; (2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors; (3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and (4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict." N.C. Gen. Stat. § 15A-1235(b).

¶ 20        A "charge which might reasonably be construed by a juror as requiring him to surrender his well-founded convictions or judgment to the views of the majority is erroneous." *State v. Gillikin*, 217 N.C. App. 256, 262, 719 S.E.2d 164, 168 (2011). Thus, the trial court "may not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." N.C. Gen. Stat. § 15A-1235(c). Telling the jury they must deliberate "until" they reach a unanimous verdict, for example, is "compelling, coercive language" that is impermissible. *Gillikin*, 217 N.C. App. at 265, 719 S.E.2d at 170.

¶ 21        In this case, the jury sent a note after the first day of deliberations explaining that "[a]t this moment we cannot come to a unanomous [*sic*] decision on neither guilty or not guilty." In response, the court properly instructed the jury using the language of N.C. Gen. Stat. § 15A-1235 before sending the jury home for the night. The next morning, when the jury returned, the court instructed the jury, telling them, "I will

now release you to the jury room to resume your deliberations with a goal of reaching a unanimous decision as to each charge."

Jackson argues that the trial court's instruction to resume deliberations "with a goal of reaching a unanimous decision," which was given separately from the full *Allen* instructions the previous evening, was unduly coercive and resulted in a defective jury verdict. We reject this argument. The trial court properly gave the required *Allen* instructions to ensure that jurors understood they were not compelled to reach a unanimous verdict. In light of those instructions, the trial court's decision, when deliberations resumed, to inform the jury that they should have the "goal" of reaching a unanimous verdict did not compel any juror to "surrender his well-founded convictions or judgment to the views of the majority." *Gillikin*, 217 N.C. App. at 262, 719 S.E.2d at 168. It simply reinforced that the jury's charge was to deliberate and reach a unanimous verdict if possible. We thus find no error in the trial court's instructions.

## Conclusion

We find no error in the trial court's judgment.

NO ERROR.

Judges ZACHARY and GRIFFIN concur.