STATE OF NORTH CAROLINA v. JAMES HAROLD CAMPBELL

No. 40A84

(Filed 6 July 1984)

1. **Criminal Law § 42.2— admission of real evidence—necessary showing**

   Before real evidence is properly received into evidence, the item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change. The trial court possesses and must exercise sound discretion in determining the standard of certainty that is required to show that an object offered is the same as the object involved in the incident and is in an unchanged condition.

2. **Criminal Law § 42.6— necessity for showing chain of custody**

   A detailed chain of custody of real evidence need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered.

3. **Criminal Law § 42.6; Rape and Allied Offenses § 4— chain of custody of rape kit**

   The State established a sufficient chain of custody of a "rape kit" to prove that samples in the kit examined by an SBI serologist were those placed in the

kit by the examining physician so that the kit and an analysis of its samples were properly admitted into evidence where the kit was sealed in the presence of the physician who examined the victim, the physician testified that the kit introduced into evidence was "without question" the one he had prepared for the victim, and the physician's seal and another one placed upon the kit by a police officer were still unbroken when the kit was placed in the possession of the serologist, and where defendant can only speculate about the possibility that the rape kit in this case was tampered with or interchanged with another kit.

BEFORE *Lee, Judge*, presiding at the September 19, 1983 session of Superior Court, CHATHAM County, the defendant was convicted of first degree rape and sentenced to life imprisonment. The defendant appealed directly to the Supreme Court as a matter of right pursuant to G.S. 7A-27(a). Heard in the Supreme Court May 11, 1984.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Assistant Attorney General, for the State.*

*Robert L. Gunn, for defendant appellant.*

MITCHELL, Justice.

The sole issue raised on this appeal is whether the trial court erred in admitting into evidence a "rape kit" prepared by a physician who examined the victim shortly after the rape occurred. The defendant contends that the State failed to establish a chain of custody for the kit between the time of its preparation and the time its contents were analyzed by a forensic serologist employed by the State Bureau of Investigation. We find no error in the admission of the kit into evidence.

A detailed recitation of the facts of this case is unnecessary for a discussion of the issue raised on appeal. The evidence tended to show that on June 11, 1983 the defendant, aged twenty-three, engaged in vaginal and anal intercourse with the nine-year-old victim, his stepdaughter. He threatened that he would "kill and drown" her if she told anyone what had happened. The child reported what had happened to relatives on the following day. The child was taken to North Carolina Memorial Hospital in Chapel Hill later that day where she was examined by Dr. Larry Cobb Mickens, a senior resident pediatrician. Mickens observed lacerations in the child's genital and rectal areas which were con-

sistent with the child's having engaged in intercourse with an adult male. Mickens took hair and blood samples from the child and vaginal and rectal smears and swabs. After completing necessary paperwork, he placed the evidence obtained in a cylindrical container called a "rape kit" which was marked and sealed in his presence and placed in a refrigerator nearby.

A forensic serologist testified that bloodstains found on the bedspread upon which the rape allegedly occurred were consistent with the blood taken from the victim. Traces of semen found on the bedspread were consistent with that of a male having the defendant's blood groupings.

The defendant argues that the State failed to establish a chain of custody sufficient to allow the admission of either the rape kit or results obtained by analysis of its contents into evidence. He points to evidence showing that when Mickens prepared the kit, it was placed in a refrigerator around the corner from the emergency room where the examination took place. The defendant complains that there was no evidence about the location of the refrigerator and that there was no indication of whether the refrigerator was locked or unlocked. Mickens testified that on the morning following the preparation of the kit, he saw the kit in the hands of physicians and nurses interviewing the victim. The defendant notes that the hospital's chief security officer in charge of evidence was on vacation when the kit was prepared. That officer had no knowledge of the kit until his return from vacation eight days after its preparation when the kit finally came into his possession. The defendant argues that the failure of the State to demonstrate a chain of custody renders the evidence inadmissible. We find no merit in this assignment of error.

[1, 2] This Court has stated that a two-pronged test must be satisfied before real evidence is properly received into evidence. The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, *reh'g denied*, 448 U.S. 918 (1980). The trial court possesses and must exercise sound discretion in determining the standard of certainty that is required to show that an object offered is the same as the object in-

volved in the incident and is in an unchanged condition. *Id.* A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered. *See State v. Kistle*, 59 N.C. App. 724, 297 S.E. 2d 626 (1982), *review denied*, 307 N.C. 471, 298 S.E. 2d 694 (1983). Further, any weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility. *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976). *See also State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983).

[3]   We hold that an adequate chain of custody was established in this case to prove that the samples in the rape kit examined by the SBI serologist were those placed in the kit by Mickens. The evidence showed that the samples were taken in Mickens' presence and that he signed various forms for inclusion in the rape kit as he examined the victim and performed procedures required for the kit's completion. Mickens testified that the kit he identified on the witness stand was, without question, the same kit he had completed as he examined the victim; he testified that he recognized his handwriting on the kit and the victim's panties that he had included in the kit. He testified that the kit was new when he prepared it, and that it was sealed in his presence by the attending nurse. Mickens testified that the nurse then placed the kit in a refrigerator at his request and reported that she had placed it there.

The chief of security and evidence custodian at the hospital, David Donaldson, testified about the procedures used in securing evidence at the hospital. He stated that when a rape kit is completed, it is given to a security officer and placed in an evidence refrigerator that remains locked. The key to the refrigerator is kept by a security officer until the evidence is turned over to Donaldson or the acting chief who puts the evidence in the main refrigerator. The chief of security has the sole key to the main refrigerator. Donaldson testified that a record is kept of the custody of the evidence until the evidence is released to a police officer. The record for the rape kit in question showed that the kit passed from a nurse to two successive security guards and finally to the evidence custodian who was acting in Donaldson's stead while he was on vacation. The acting custodian placed the kit in the main refrigerator to which she had the sole key at 7:32

a.m. on June 13, 1983 following the examination on the night of June 12, 1983. When Donaldson returned from vacation she returned the key to him. Donaldson testified that when the container came into his possession it was sealed and did not appear to have been tampered with. Donaldson gave the sealed container bearing the victim's name to Officer Henry Shamburger who transported the container to the SBI laboratory. A written record of the chain of possession of the kit while at the hospital was entered into evidence without objection.

Officer Shamburger testified that when he received the rape kit from Donaldson, the plastic seal around the kit was intact. Shamburger placed his own seal around the kit and delivered it to the SBI laboratory. There the kit was placed in a lockbox which was padlocked until the examining serologist unlocked the box and removed the kit. The serologist, William Weis, testified that he had the only key to the lockbox. The serologist testified that when he received the kit, it did not appear to have been tampered with and that the seals were intact. Weis testified that he recognized the markings on the kit admitted into evidence and confirmed that the kit was the one identified as containing samples taken from the victim.

The defendant can only speculate about the possibility that the rape kit in this case was tampered with or interchanged with another kit. The kit was sealed in the presence of the physician who examined the victim. The physician testified that the kit introduced into evidence was "without question" the one he had prepared for the victim. His seal and another one placed upon the kit by Officer Shamburger were still unbroken when the kit was placed in the possession of the serologist.

We take guidance from our decision in *State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979). In *Detter* the evidence showed that tests from an autopsy were mailed to a laboratory. The tests were labeled with the name of the deceased. The procedure at the laboratory was to receive mailed samples and to place the samples upon a bench to await assignment to individual technicians. Although the defendant in *Detter* argued that several people had access to the samples while they remained on the bench and that the identity of the employee who picked up the sample from the post office was unknown, we held it "clear that the possibility

that the specimens were interchanged with those of another body is too remote to have required ruling this evidence inadmissible." *State v. Detter*, 298 N.C. at 634, 260 S.E. 2d at 588. This assignment of error is without merit.

The defendant's remaining assignment of error having been abandoned at oral argument, we find the defendant received a full and fair trial free of prejudicial error.

No error.