STATE OF NORTH CAROLINA v. JAMES HARRELL BROWN, DEFENDANT

No. COA05-136

(Filed 21 February 2006)

## 1. Burglary and Unlawful Breaking or Entering— window opened by 13-year-old—authority to consent to entry

There was sufficient evidence to prove burglary or felonious breaking or entering where a 13-year-old allowed defendant (45 years old) into her parent's home for illicit sex while her parents were sleeping. There was sufficient evidence to allow a jury to find that defendant could not have reasonably believed that the child had authority to allow him entry for this purpose.

## 2. Burglary and Unlawful Breaking or Entering— constructive breaking—window opened by 13-year-old on defendant's instructions

A reasonable jury could find that defendant committed a constructive breaking where a 13-year-old girl followed defendant's instructions in opening her bedroom window so that he could enter her parents home at night for illicit sex with her. Defendant's behavior showed that he knew she lacked authority to consent to his entry.

## 3. Burglary and Unlawful Breaking or Entering— instruction—consent to enter by 13-year-old

The trial court's instruction as a whole was correct in a prosecution for statutory rape, burglary, and other offenses involving a 13-year-old girl opening her window for the 45-year-old defendant to enter her bedroom for illicit sex. The court focused the jury's attention on the reasonableness of defendant's belief that the child had authority to consent to his entry, and the burden of proof was emphasized elsewhere in the instructions.

## 4. Evidence— chain of custody—computers

There was no need for testimony setting forth a detailed chain of custody for defendant's computers, and the child pornography within, in a prosecution for statutory rape, burglary, and other offenses. Once the computers were admitted, any doubts were to be resolved by the jury. Defendant did not identify on appeal any reason to believe that the computers' contents may have been altered.

**5. Evidence— child pornography—admission not prejudicial**

There was no prejudice in a prosecution for statutory rape, burglary, and other offenses in the admission of sexual photographs of children from defendant's computers. Defendant twice confessed to engaging in sex with the child, his e-mail and appearance at her school left no doubt that he knew her age, he took great efforts to conceal himself from her parents, and he told the child that he could spend 20 years in jail if he was caught with her.

**6. Sentencing— within presumptive range—no statutory right to appeal—no findings of mitigating factors**

A defendant sentenced within the presumptive range has no statutory right to appeal the sentence and this defendant did not file a petition for certiorari. Moreover, the principle that the court must find mitigating factors if a preponderance of the evidence supports them applies only when the trial court imposes a sentence outside the presumptive range.

**7. Judgments— clerical errors—dates of offenses**

A judgment was remanded for correction of clerical errors involving the dates of offenses.

Appeal by defendant from judgments entered 2 September 2004 by Judge F. Donald Bridges in Burke County Superior Court. Heard in the Court of Appeals 18 October 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Anita LeVeaux, for the State.*

*Franklin E. Wells, Jr. for defendant-appellant.*

GEER, Judge.

Defendant James Harrell Brown appeals from his conviction on three counts of statutory rape of a person 13, 14, or 15 years old, two counts of felonious breaking or entering, and one count each of first degree burglary, statutory sexual offense against a person 13, 14, or 15 years old, and indecent liberties with a child. Defendant argues primarily on appeal that there was insufficient evidence to convict him of burglary and breaking or entering because the child victim consented to his nighttime entries into her parents' house. Defendant also makes a related argument pertaining to the jury instructions. Because the State presented evidence that defendant could not have

reasonably believed that the child victim, a 13-year-old, had authority to consent to defendant's entry into her parents' home for the purpose of engaging in sexual intercourse with her and because the trial court properly instructed the jury on this issue, we find no error. Although we also hold that defendant's other contentions on appeal are without merit, we remand this case for the correction of certain clerical errors detailed below.

### Facts

The State's evidence tended to show the following. In September 2003, defendant, age 45, began an Internet correspondence with the victim, D.N.K., age 13. D.N.K.'s online username, at the time, was "I'masexygirl." Defendant initiated the correspondence by sending D.N.K. a message saying: "A sexy girl can make men do unbelievable things." When defendant told D.N.K. that he was 45 years old, she informed him that he was too old to have a relationship with her, but that they could still be friends. Later, she told him that she was 13 years old.

The two continued to correspond over the Internet for about a month. During the course of their conversations, defendant asked D.N.K. if she was a virgin, and she replied that she was. Defendant told her that he wanted to have sex with her and that, because he was older and more experienced, he knew "how to be gentle and easy so that you can be fulfilled as a woman and not be hurt."

Defendant told D.N.K. that he wanted to see her, and encouraged her to sneak out of her parents' house to meet him. When D.N.K. refused to do so, the two made plans for defendant to come to D.N.K.'s house on Tuesday, 30 September 2003, between 10:00 and 11:00 p.m. D.N.K. gave defendant her home address and supplied him with a floor plan of her house. Defendant promised that he would bring some Cherry Coke mixed with alcohol to help D.N.K. "relax."

On the designated evening, defendant arrived at D.N.K.'s house wearing a camouflage shirt, pants, and hat, with a camouflage net over his face. As previously arranged, he signaled D.N.K. with a red penlight through the basement window of her house. When she saw the light, D.N.K. opened the basement door for defendant. After defendant entered the house, the two began hugging and kissing, and D.N.K. invited defendant to go up to her bedroom. Defendant instructed D.N.K. to go upstairs, close her bedroom door, turn her bedroom lights off, and open her window. After D.N.K. did so, defend-

ant climbed through the bedroom window, handed her two bottles of Cherry Coke mixed with alcohol, and hid in D.N.K.'s closet. Once D.N.K. was sure her parents had gone to bed, defendant got into D.N.K.'s bed with her, performed oral sex on her, and engaged in sexual intercourse. Defendant left the house around 4:30 a.m.

At approximately 11:00 p.m., on 2 October 2003, defendant again arrived at D.N.K.'s house, signaled her with the penlight, entered her bedroom by climbing through her window, gave her alcohol mixed with Coke, hid in her closet until her parents went to sleep, and then had intercourse with her and performed oral sex on her. He left before D.N.K. awoke in the morning.

On 8 October 2003, defendant went to a football game at D.N.K.'s middle school. He took her to a fast food restaurant and then dropped her off at the school. Later that night, at around 8:00 p.m., defendant went to D.N.K.'s home, signaled her with the penlight, and entered through her bedroom window. He and D.N.K. both hid in her bedroom closet, where they had intercourse and then fell asleep. While they were asleep in the closet, D.N.K.'s mother entered the bedroom. Although D.N.K. was still asleep, defendant awakened and quickly pulled his legs and feet into the closet, so that D.N.K.'s mother did not see him. Later, after D.N.K.'s parents had gone to sleep, defendant and D.N.K. had intercourse in her bed, and defendant left at about 4:30 a.m.

The next day, defendant e-mailed D.N.K. and told her that her mother had almost caught them. He said he wanted to end the relationship, explaining that he was too old for her, that "he could spend 20 years in prison for statutory rape if he got caught," and that "we cannot be sneaking around the next four years till you are of age." The same day, D.N.K.'s parents learned about D.N.K.'s relationship with defendant and called the police. In two separate statements to the police, defendant admitted that he had entered D.N.K.'s house three times while her parents were at home and that he had had sexual intercourse with her.

Following a jury trial, defendant was convicted, with respect to the events of 30 September 2003, of first degree burglary, indecent liberties with a child, statutory sexual offense against a person 13, 14, or 15 years old, and statutory rape of a person 13, 14, or 15 years old. As for the events of 2 and 8 October 2003, he was convicted of two counts of felonious breaking or entering and two counts of statutory rape of a person 13, 14, or 15 years old.

The trial court sentenced defendant to a total of four consecutive sentences of 240 to 297 months, based on his convictions for burglary, rape, and sexual offense. He also received a suspended sentence of 16 to 20 months for his indecent liberties conviction and suspended sentences of 6 to 8 months for each of his breaking or entering convictions.

I

Defendant argues on appeal that the trial court erred in denying his motions to dismiss for insufficiency of the evidence as to the burglary and felonious breaking or entering charges. In ruling on a defendant's motion to dismiss, the trial court must determine whether the State has presented substantial evidence (1) of each essential element of the offense and (2) of the defendant's being the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404, 123 S. Ct. 488 (2002). " 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Matias*, 354 N.C. 549, 552, 556 S.E.2d 269, 270 (2001) (quoting *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984)). When considering the issue of substantial evidence in assessing a motion to dismiss, the trial court must view all of the evidence presented "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818, 115 S. Ct. 2565 (1995).

"The elements of burglary in the first degree are the breaking and entering, in the nighttime, into a dwelling house or a room used as a sleeping apartment, which is actually occupied at the time of the offense, with the intent to commit a felony therein." *State v. Simpson*, 303 N.C. 439, 449, 279 S.E.2d 542, 548 (1981); *see also* N.C. Gen. Stat. § 14-51 (2005) (defining first degree burglary). The essential elements of felonious breaking or entering are "(1) the breaking or entering (2) of any building (3) with the intent to commit any felony or larceny therein." *State v. Williams*, 330 N.C. 579, 585, 411 S.E.2d 814, 818 (1992); *see also* N.C. Gen. Stat. § 14-54(a) (2005) (defining felonious breaking or entering). Although the offense of burglary includes both a breaking element and an entering element, *Simpson*, 303 N.C. at 449, 279 S.E.2d at 548, the offense of felonious breaking or entering requires that the State only prove that *either* breaking or entering took place. *State v. Myrick*, 306 N.C. 110, 114, 291 S.E.2d 577, 579 (1982).

STATE v. BROWN

[176 N.C. App. 72 (2006)]

[1] Defendant first argues that the State presented insufficient evidence to prove either burglary or felonious breaking or entering, since D.N.K., a resident of the house, consented to his entry. Defendant is correct that "[a] person entering a residence with the good faith belief that he has the consent of the owner or occupant or his authorized agent is not chargeable with the offense of breaking and entering." *State v. Tolley*, 30 N.C. App. 213, 215, 226 S.E.2d 672, 674, *disc. review denied*, 291 N.C. 178, 229 S.E.2d 691 (1976); *see also State v. Friddle*, 223 N.C. 258, 260, 25 S.E.2d 751, 752 (1943) ("[T]he fact that the breaking and entry was against the will of the owner [does not] create guilt as a matter of law. The intent with which the act was committed is material.").

Our courts have, however, recognized that a child who has a room in his or her parents' house does not have unlimited authority to allow entry to visitors. *State v. Upchurch*, 332 N.C. 439, 458, 421 S.E.2d 577, 588 (1992). Courts considering consent to entry given by a son or daughter have focused on the purpose of the entry and whether the child had authority to consent to entry for that purpose. *See, e.g., id.* ("[I]t cannot be said that either [the son] or defendant had any good-faith, reasonable belief that [the son] had authority to give defendant permission to enter his parents' home in the middle of the night when [the son] was not there [for the purpose of murdering the parents]. . . . Any authority [the son] may have had was exceeded and any implied consent was invalid from its inception."); *Tolley*, 30 N.C. App. at 215, 226 S.E.2d at 674 ("Defendant could not have reasonably believed that [the son] had authority to permit defendant to enter his parents' residence for the purpose of stealing valuables which belonged to his parents . . . ."); *see also State v. Thompson*, 59 N.C. App. 425, 426-27, 297 S.E.2d 177, 179 (1982) (daughter not authorized to enter her own parents' home for the purpose of larceny), *appeal dismissed and disc. review denied*, 307 N.C. 582, 299 S.E.2d 650 (1983).

Here, the State presented sufficient evidence to allow a jury to find that defendant could not have reasonably believed that D.N.K. had authority to allow him entry to further his purpose of committing statutory rape. Defendant's covert actions such as arriving late at night, wearing camouflage, signaling D.N.K. with a red penlight, taking precautions about turning off lights, and hiding in D.N.K.'s closet all suggest that he did not believe D.N.K. had full authority to allow him into her parents' house. Defendant's arguments based on D.N.K.'s consent to his entry thus do not support the granting of his motion to dismiss.

**[2]** Defendant argues, in the alternative, that he did not "break" into D.N.K.'s parents' house on 30 September 2003 because he entered through the open basement door and then re-entered through D.N.K.'s open bedroom window. Therefore, he contends, the trial court should have dismissed the first degree burglary charge, since burglary requires both breaking and entering.

Our Supreme Court has held:

A constructive breaking in the law of burglary occurs, quite simply, "[w]hen an opening is made not by the defendant but by . . . some other person and, under the circumstances, the law regards the defendant as the author thereof. . . ." 3 C. Torcia ed. Wharton's Criminal Law § 330 at 200 (14th ed. 1980). . . . It is enough if that person is acting at the direction, express or implied, of defendant, or is acting in concert with defendant, or both.

*State v. Smith*, 311 N.C. 145, 149-50, 316 S.E.2d 75, 78 (1984). There is a constructive breaking, for example, " '[w]hen entrance is obtained by procuring the servants or some inmate to remove the fastening.' " *Id.* at 148, 316 S.E.2d at 77 (quoting *State v. Henry*, 31 N.C. (9 Ired.) 463, 467 (1849)).

In the present case, we hold that a reasonable jury could find that defendant committed a constructive breaking. D.N.K., a minor "inmate" of the house, opened the basement door to defendant as they had pre-arranged, and then, following his instructions, opened her bedroom window for him. Defendant committed a constructive breaking since the window and door were only ajar because defendant induced D.N.K. to open them, and, as we have discussed, defendant's behavior showed that he knew D.N.K. lacked authority to consent to defendant's entry. Since the State presented substantial evidence of a constructive breaking, the trial court properly denied defendant's motion to dismiss the burglary charge.

II

**[3]** Defendant next argues that the court improperly instructed the jury regarding consent as it relates to burglary and breaking or entering. During deliberations, the jury submitted a question asking the court to "[d]efine ownership and tenant" as those terms relate to consent. The following colloquy then occurred:

THE COURT: . . . It sounds to me as if the question you're asking is whether or not an occupant of the dwelling would be an owner or tenant for purposes of these instructions.

**STATE v. BROWN**

[176 N.C. App. 72 (2006)]

THE FOREPERSON: Yes, sir.

THE COURT: That is, a person having authority to consent to the entry by another person. And in that regard, I instruct you that occupants in the dwelling do not always have authority to consent to entry by others. Although certainly any occupant of the dwelling may under certain circumstances have consent— or have authority to consent to the entry of the dwelling by others.

Although one may consent to entry by another into an occupied dwelling, that consent is not a valid consent unless there was authority to grant that consent. It is no defense to a burglary charge if a defendant is given consent to enter by one not having authority to do so.

Now, in determining whether or not this defendant had consent of an owner or tenant to enter into the home of [D.N.K.'s father], if you find that he did enter into the home, it would be up to you, as jurors, to determine, based on all of the circumstances as they existed at the time, whether or not that person had authority to grant that consent.

*For example, you should consider the time of entry, the purpose of the entry, and the reasonableness of the belief, if any, of the defendant that any person consenting to his entry had authority to grant that consent.*

(Emphasis added.) Defendant argues that the trial judge's answer to the question focused on whether the person allowing entry actually had authority to consent, without properly taking into account the importance of defendant's perception of whether that person had such authority.

Our standard of review in cases involving jury instructions is as follows:

This Court reviews [a trial court's] instructions [to the jury] contextually and in [their] entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed . . . . Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Blizzard*, 169 N.C. App. 285, 296-97, 610 S.E.2d 245, 253 (2005) (internal quotation marks omitted).

Here, the last sentence of the court's answer to the jury's question focuses the jury's attention on the defendant's reasonable belief as to D.N.K.'s authority to consent to his entry. Since jury instructions must be considered as a whole and not in isolated fragments, *State v. Anderson*, 350 N.C. 152, 179, 513 S.E.2d 296, 312, *cert. denied*, 528 U.S. 973, 145 L. Ed. 2d 326, 120 S. Ct. 417 (1999), we can find no error in the judge's response to the jury's question. *See also State v. Humphrey*, 13 N.C. App. 138, 142, 184 S.E.2d 902, 904 (1971) (jury charge "must be considered as a whole, . . . with the presumption that the jury did not overlook any portion of it and if, when so construed, it presents the law fairly and correctly, there is no ground for reversal").

Defendant also contends that the court's answer did not contain any reference to the State's burden of proving beyond a reasonable doubt that defendant could not have believed D.N.K. had authority to consent to his entry into her home. As the Court emphasized the State's burden of proof elsewhere in the jury instructions, the failure to re-emphasize that burden here was not error. *See State v. Morgan*, 359 N.C. 131, 163-64, 604 S.E.2d 886, 906 (2004) (holding that a challenged jury instruction did not impermissibly shift the burden of proof when the trial court elsewhere instructed the jury that the State must prove its case beyond a reasonable doubt), *cert. denied*, —— U.S. ——, 163 L. Ed. 2d 79, 126 S. Ct. 47 (2005).

### III

**[4]** Upon defendant's arrest, the State seized his computers and then introduced into evidence child pornography gathered from the hard drives, as well as extensive e-mail correspondence between defendant and D.N.K. Defendant argues that the admission of these exhibits was improper because the State did not properly establish a chain of custody for the computers and their contents between the time the computers were seized from defendant's possession and the time of trial.

With respect to physical objects such as defendant's computers, the object offered into evidence "must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." *State v. Campbell*, 311 N.C. 386,

388, 317 S.E.2d 391, 392 (1984). Nevertheless, "[a] detailed chain of custody need be established only when [1] the evidence offered is not readily identifiable or is susceptible to alteration and [2] there is reason to believe that it may have been altered." *Id.* at 389, 317 S.E.2d at 392. "[A]ny weak links in a chain of custody relate only to the weight to be given evidence and not to its admissibility." *Id.*

Here, defendant argues that the computers' contents were "susceptible to alteration" because multiple police officers had access to the computers while they were being seized and, afterwards, the hardware was not stored in a secure location while defendant's case was pending. Defendant has not, however, identified on appeal any "reason to believe that [the computers' contents] may have been altered." *Id.* Therefore, testimony setting forth a detailed chain of custody was not necessary in order for the trial court to properly admit the computers. Once the computers and their contents were admitted, any remaining doubts surrounding their chain of custody were to be resolved by the jury.

IV

**[5]** Defendant also objects separately under N.C.R. Evid. 402, 403, and 404(b) to the trial court's admission of photographs removed from his computer, showing children engaged in sexual acts or posed in sexual positions. We need not reach the merits of these issues because, even if we assume that the trial court erred in admitting the photographs, defendant has failed to demonstrate prejudice warranting a new trial.

In order to be entitled to a new trial, defendant must show that there is a reasonable possibility that, had the evidence not been admitted, a different result would have been reached at his trial. *See* N.C. Gen. Stat. § 15A-1443(a) (2005) (defining prejudicial error and placing the burden on defendant to make a showing of such error). Here, defendant twice confessed to the police that he had engaged in sexual intercourse with D.N.K. on three occasions in her parents' house. Moreover, the e-mail correspondence and defendant's appearance at D.N.K.'s middle school leave little doubt that defendant knew D.N.K.'s age. Finally, he made great efforts to conceal himself from D.N.K.'s parents and told D.N.K. that if he was caught with her, he could spend 20 years in jail. We can perceive no possibility that the jury would have acquitted defendant absent the admission of the photographs.

V

**[6]** Defendant's final argument pertains to the trial court's failure to find any mitigating factors during defendant's sentencing hearing. Defendant was sentenced in the presumptive range and, therefore, has no statutory right to appeal his sentence. *See* N.C. Gen. Stat. § 15A-1444(a1) (2005); *see also State v. Brown*, 146 N.C. App. 590, 593-94, 553 S.E.2d 428, 430 (2001), *appeal dismissed and disc. review denied*, 356 N.C. 306, 570 S.E.2d 734 (2002). Since defendant has not filed a petition for writ of certiorari seeking review of this issue, we do not consider it.

We note, however, that although the trial court must consider evidence of mitigating factors, it is within the court's discretion whether to depart from the presumptive range. *See* N.C. Gen. Stat. § 15A-1340.16(a) (2005). *See also Brown*, 146 N.C. App. at 594, 553 S.E.2d at 431 (finding no error when court imposed presumptive range sentence despite defendant's undisputed evidence in mitigation); *State v. Chavis*, 141 N.C. App. 553, 568, 540 S.E.2d 404, 415 (2000) (same). *State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005) does not alter that analysis. *See id.* at 439, 615 S.E.2d at 266 ("Those portions of N.C.G.S. § 15A-1340.16 which govern a sentencing judge's finding of mitigating factors . . . are not implicated by *Blakely [v. Washington*, 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004)] and remain unaffected by our decision in this case."). Defendant cites the case of *State v. Walker*, 167 N.C. App. 110, 605 S.E.2d 647 (2004), *appeal dismissed and disc. review denied*, 359 N.C. 642, 614 S.E.2d 921 (2005) for the proposition that the trial court must find mitigating factors if a preponderance of the evidence supports them. This principle applies, however, only when the trial court imposes a sentence outside the presumptive range. *State v. Knott*, 164 N.C. App. 212, 217, 595 S.E.2d 172, 176 (2004).

**[7]** We conclude our consideration of defendant's case by noting a series of clerical errors in the trial court's judgments imposing sentence. The jury verdicts indicate that defendant was convicted of indecent liberties, statutory rape, burglary, and sexual offense for the events of 30 September 2003. The judgments, however, list the offense date for these crimes as 2 October 2003. With respect to 2 October 2003, the jury convicted defendant of felonious breaking or entering and statutory rape, but the relevant judgments list the offense date for those crimes as 30 September 2003. The verdicts and judgments are correctly matched for the events of 8 October 2003. Because of the discrepancy between the verdicts and the judgments,

**BUILDERS MUT. INS. CO. v. NORTH MAIN CONSTR., LTD.**

[176 N.C. App. 83 (2006)]

we remand this case to the Burke County Superior Court for the correction of this apparent clerical error.

No prejudicial error; remanded with instructions.

Judges WYNN and McGEE concur.