An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-871

NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014

STATE OF NORTH CAROLINA

|  |  |
|---|---|
| v. | Wake County |
|  | No. 11 CRS 206744 |

NORMAN TREVOR WILLIAMS,
    Defendant.

Appeal by defendant from judgment entered 5 November 2012 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 22 January 2014.

>   *Attorney General Roy Cooper, by Special Deputy Attorney General Buren R. Shields, III, for the State.*

>   *James N. Freeman, Jr., for defendant-appellant.*

BRYANT, Judge.

Where evidence is readily identifiable and not subject to alteration, any weak links in the chain of custody affect the weight, not the admissibility, of such evidence. A trial court is not required to instruct the jury on a lesser-included

offense where the evidence would not permit a jury to rationally find defendant guilty of a lesser-included offense and acquit defendant of the greater offense. A trial court properly admits business records where the records were made at or near the time of the transaction in question and are authenticated by a witness familiar with the records and how they are made; the person to whom the records relate need not be a witness at trial in order for business records to be admissible.

On 12 July 2008, Jesse Brunner was found shot to death in the parking lot of the Spanish Court Apartments in Raleigh. Tabitha Milbourne, who was with Brunner at the time of the shooting, testified that as Brunner parked his car and they were about to exit, a man wearing a ski mask ran up to him and exchanged profanities; Milbourne then heard several shots fired. A witness who lived at the apartment complex testified that he heard shots fired in the parking lot and saw a man wearing a mask run across the parking lot, get into a white car, and drive away.

When police arrived at the scene of the shooting, they found Brunner's body lying across the front center console of his car. Portions of a roll of Rolaids were found on Brunner's pants and on the ground near his feet. Seven spent shell

casings for a 40 caliber firearm were found at the scene, mostly inside the car. Blood spatter was found on the side of Brunner's car and the car parked next to Brunner. The medical examiner concluded that Brunner had been shot 7—9 times, likely at close range, and died as a result of gunshot wounds to the chest. The trajectory of the wounds indicated that the shots were fired downwards towards Brunner, and all of the recovered shell casings were determined to have been fired by the same handgun.

Based on several leads, Raleigh police interviewed defendant Norman Trevor Williams ("defendant") and defendant's girlfriend at that time, Jennifer Tu Taing ("Taing"): both denied having any involvement with Brunner's death. No murder weapon was recovered, and no arrests were made at that time.

In March 2011, a witness came forward with information that defendant admitted to her that he had shot Brunner. The witness also stated defendant told her he had concealed the murder weapon inside his sister's car. Based on this information, Raleigh police officers located the car and found a handgun concealed in a dark cloth or sock inside the engine compartment. Testing of the gun, a .40 caliber Glock, indicated all seven shell casings recovered from the scene were fired from that

weapon.    Defendant  and  Taing  were  arrested  for  the  murder  of Brunner.

After being jailed for seven months, Taing informed Raleigh police  that  she  was  willing  to  testify  about  defendant's involvement  with  the  Brunner  murder  in  exchange  for  a  more lenient sentence.  Taing told police that she was with defendant the  night  Brunner  was  killed;  defendant  told  her  he  needed  to get  money  and  directed  her  to  drive  and  park  at  the  Spanish Court Apartments.  Taing  stated  that  shortly  after  defendant exited  the  car,  she  heard  gunshots  and  saw  defendant  running back to the car in a panic. Defendant was carrying a black handgun, had crumpled-up money estimated to be "like, a thousand dollars" hanging out of his pocket, and his pants were speckled with blood.  Taing  testified  that  she  then  drove  to  her  house where defendant hid the gun in her room, and she and defendant agreed  to  lie  about  their  whereabouts  to  police  if  questioned about  Brunner's  murder.   Taing  also  stated  that  she  was  in  a relationship with defendant from 2008 until 2010, and that she believed defendant "had problems" with Brunner.

On 18 April 2011, defendant was indicted by a Wake County grand jury for first-degree murder.  On 5 November 2012, a jury found  defendant  guilty  of  first-degree  murder  on  the  basis  of

malice, premeditation and deliberation, and based on felony murder. Defendant was sentenced to life in prison without parole. Defendant appeals.

_____

On appeal, defendant raises five issues: whether the trial court erred (I) in denying defendant's motion to suppress; (II) in failing to charge or submit to the jury the lesser-included offense of second-degree murder; (III) in not granting defendant's motion to dismiss the charge of first-degree murder under the felony murder rule; (IV) in allowing a witness to testify about inadmissible hearsay statements; and (V) in allowing a witness to testify regarding cell phone records of Taing's mother.

*I.*

Defendant first argues that the trial court erred in denying his motion to suppress. We disagree.

A trial court's decision to admit physical, tangible items into evidence is reviewed for abuse of discretion. *See State v. Campbell*, 311 N.C. 386, 388—89, 317 S.E.2d 391, 392 (1984). "Evidentiary errors are harmless unless a defendant proves that absent the error a different result would have been reached at

trial." *State v. Ferguson*, 145 N.C. App. 302, 307, 549 S.E.2d 889, 893 (2001) (citation omitted).

On appeal, defendant contends the trial court erred by allowing into evidence a handgun found more than three years after the murder of Brunner in a car that did not belong to defendant and was not properly secured during that three year period.

> Before real evidence may be received into evidence, the party offering the evidence must first satisfy a two-pronged test. "The item offered must be identified as being the same object involved in the incident and it must be shown that the object has undergone no material change." Determining the standard of certainty required to show that the item offered is the same as the item involved in the incident and that it is in an unchanged condition lies within the trial court's sound discretion. "A detailed chain of custody need be established only when the evidence offered is not readily identifiable or is susceptible to alteration and there is reason to believe that it may have been altered." Any weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility.

*State v. Fleming*, 350 N.C. 109, 131, 512 S.E.2d 720, 736 (1999) (citing *Campbell*, 311 N.C. at 388—89, 317 S.E.2d at 392).

Here, the State presented evidence that the murder weapon, a .40 caliber Glock handgun, was recovered from the engine

compartment of a black car that had, at the time of Brunner's murder, belonged to defendant's sister. Police recovered the weapon in 2011 after a witness told them that defendant told her he had shot Brunner and hid the handgun in his sister's car. The weapon was found behind the car's right front headlight, wrapped in a dark cloth or sock. The police officer who found the gun testified that the wrapped gun had debris, such as pine needles and leaves, all around it, indicating that it had been in the car for some time. After the gun was removed from the vehicle, the State presented evidence that the gun was kept in a secure evidence locker until trial; ballistics testing indicated all seven spent shell casings recovered from the scene came from this particular gun and that the weapon had not been altered in any way to change this conclusion. Defendant presented evidence showing that the car in question had sat for several years in a junkyard, was broken into at least once while in the junkyard, and underwent engine repairs twice during this time. Defendant also presented evidence that the handgun was not properly processed pursuant to CCBI protocol, attempting to establish a weak link in the handgun's chain of custody.

In denying defendant's motion to suppress, the trial court considered and weighed the evidence presented by both parties.

The trial court properly exercised its discretion in finding that a detailed chain of custody was not necessary because sufficient evidence was presented from which a jury could find that the gun was the weapon used at the crime scene and that it had not been altered. Furthermore, although the CCBI agent admitted to violating CCBI protocol by not promptly testing the gun, the agent also testified that the gun remained in a secure evidence locker during this time. As "[a]ny weak links in the chain of custody pertain only to the weight to be given to the evidence and not to its admissibility" where the evidence in question was not altered, the trial court did not abuse its discretion in admitting the handgun into evidence.

Defendant further argues that the trial court's denial of his motion to suppress the handgun resulted in prejudicial error. Defendant's argument lacks merit, as defendant has failed to show that absent the admission of the handgun into evidence, a different result would have been reached at defendant's trial. *See State v. Lawrence*, 365 N.C. 506, 507—08, 723 S.E.2d 326, 327—28 (2012).

The State presented several witnesses who testified that defendant had confessed to killing Brunner and hiding the murder weapon in his sister's car. The State presented further

evidence demonstrating that defendant had a long-running dispute with Brunner, that defendant had repeatedly threatened to kill Brunner, and that defendant was seen carrying a handgun, had blood on his pants, and had a pocketful of crumpled money immediately after Brunner was shot. As such, the State presented ample evidence by which a jury could have found defendant guilty of first-degree murder. Therefore, because defendant is unable to show that admission of the murder weapon was error, defendant's first argument on appeal is overruled.

*II.*

In his second argument on appeal, defendant contends the trial court erred in not instructing the jury on second-degree murder. We disagree.

> [A] trial judge must instruct the jury on all lesser included offenses that are supported by the evidence, even in the absence of a special request for such an instruction, and that the failure to do so is reversible error which is not cured by a verdict finding the defendant guilty of the greater offense. Only when the "evidence is clear and positive as to each element of the offense charged" and there is no evidence supporting a lesser included offense may the judge refrain from submitting the lesser offense to the jury.

*State v. Montgomery*, 341 N.C. 553, 567, 461 S.E.2d 732, 739 (1995) (citations omitted).

> An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater. The trial court should refrain from indiscriminately or automatically instructing on lesser included offenses. Such restraint ensures that [t]he jury's discretion is . . . channelled so that it may convict a defendant of [only those] crime[s] fairly supported by the evidence.

*State v. Taylor*, 362 N.C. 514, 530, 669 S.E.2d 239, 256 (2008) (citations and quotations omitted).

The trial court announced during the charge conference that it would not submit the lesser-included offense of second-degree murder to the jury. In determining whether to instruct the jury on the lesser-included offense of second-degree murder,

> [i]f the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is *no* evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 771 (2002) (citation omitted).

Although defendant concedes that the jury found him guilty of first-degree murder on the basis of malice, premeditation and

deliberation and based on the felony murder rule, defendant contends that the trial court erred in not submitting the charge of second-degree murder to the jury because the testimony of Milbourne and Taing negated the finding of malice, premeditation and deliberation required for first-degree murder. Taing testified defendant told her that he felt like he had to kill Brunner because Brunner had swung at him. Milbourne, the only eyewitness to the shooting, testified she saw Brunner raise his arm towards defendant before shots were fired. Both testified that there was "bad blood" between defendant and Brunner.

Defendant contends the trial court erred in not instructing the jury on second-degree murder because the testimony of Milbourne and Taing implied that defendant shot Brunner in self-defense and without premeditation and deliberation. "First-degree murder is the unlawful killing of a human being with malice, premeditation and deliberation." *State v. Nicholson*, 355 N.C. 1, 37, 558 S.E.2d 109, 134 (2002) (citation omitted). Premeditation and deliberation can be shown by:

> (1) want of provocation on the part of the deceased; (2) the conduct and statements of the defendant before and after the killing; (3) threats and declarations of the defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the

> dealing of lethal blows after the deceased has been felled and rendered helpless; [](6) evidence that the killing was done in a brutal manner[; . . . and (7)] the nature and number of the victim's wounds[.]

*State v. Gladden*, 315 N.C. 398, 430—31, 340 S.E.2d 673, 693 (1986) (citations omitted).

Here, the State presented evidence which tended to show that defendant acted with premeditation and deliberation in killing Brunner: defendant, after saying he needed to get money, directed Taing to drive to Brunner's apartment complex parking lot and park; wearing a ski mask and carrying a gun defendant ran up to Brunner's car as Brunner and Milbourne were about to exit and fired at least seven shots at Brunner; the wound trajectories all pointed downwards into Brunner's body, suggesting defendant continued to fire at Brunner even after Brunner collapsed in his car; defendant brought a handgun with him to confront Brunner; defendant had repeatedly threatened to kill Brunner and had made hand gestures to simulate firing a gun towards Brunner; no gun was found on or near Brunner's body; and defendant attempted to cover-up his involvement with the murder. Defendant presented no credible argument or theory of defense that could entitle him to a lesser-included offense instruction on second-degree murder, as the evidence presented to support a

charge of first-degree murder on the basis of malice, premeditation and deliberation was such that a jury could not rationally find defendant guilty of the lesser charge of second-degree murder. *See Taylor*, 362 N.C. at 530, 669 S.E.2d at 256. Accordingly, defendant's second argument on appeal is overruled.

*III.*

In his third argument on appeal, defendant contends the trial court erred in not granting his motion to dismiss the charge of first-degree murder under the felony murder rule. We disagree.

A motion to dismiss for insufficiency of the evidence must be granted unless there is substantial evidence of the existence of each essential element of those crimes charged and of defendant's identity as the perpetrator of the crimes. *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence [to support denial of a dismissal motion] is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982) (citation omitted). In making this determination, the evidence must be viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference." *State v. Locklear*, 322 N.C.

349, 358, 368 S.E.2d 377, 382 (1998) (citation omitted). The State's evidence need not exclude "every reasonable hypothesis of innocence." *Powell*, 299 N.C. at 101, 261 S.E.2d at 118. This Court reviews the denial of a motion to dismiss for insufficiency of the evidence using a *de novo* standard of review. *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In conducting such a *de novo* review, we consider the matter anew and freely substitute our judgment for that of the trial court. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

Defendant contends the trial court erred in denying his motion to dismiss because the State failed to prove each element of the crime of robbery with a dangerous weapon. Specifically, defendant argues that the State failed to prove the first element of an unlawful taking of personal property because Taing and a second witness did not testify that defendant intended to commit a robbery when he shot Brunner. Defendant's argument lacks merit, as the State met its burden of proving each element of robbery with a dangerous weapon through both direct and circumstantial evidence.

> The elements of robbery with a dangerous weapon are: (1) an unlawful taking or an attempt to take personal property from the person or in the presence of another;

> (2) by use or threatened use of a firearm or other dangerous weapon; (3) whereby the life of a person is endangered or threatened.

*State v. Cole*, 199 N.C. App. 151, 156, 681 S.E.2d 423, 427 (2009) (citation and quotation marks omitted).  The elements of a crime must be proven by substantial evidence, either "direct, circumstantial, or both."  *State v. Small*, 328 N.C. 175, 180, 400 S.E.2d 413, 415—16 (1991).

To show that defendant intended to and indeed did rob Brunner, the State presented evidence based on the testimony of Taing that on the night of Brunner's shooting defendant directed her to drive to a particular apartment complex (Spanish Court Apartments, where Brunner lived) because he needed money and was going to "pull a jooks"[1] to get some.  After Taing heard "popping sounds," defendant ran back to the car and ordered her to drive away.  Taing further testified that when she and defendant reached her parents' house, she noticed defendant had blood on his pants, money, "like, a thousand dollars," crumpled up in his pockets, and a handgun.  When Brunner's body was found, the body was partially turned and laying across the center console of the car.  Near Brunner's feet police recovered a partial roll of Rolaids antacids and two condoms, while a second piece of a

---

[1] Upon request by the trial court, Taing defined "pull a jooks" as "a slang term for getting money in any way."

Rolaids wrapper was found on Brunner's pants. Such evidence, while circumstantial in nature, suggests that after Brunner was shot, defendant searched Brunner's pants pockets for money, altering the position of Brunner's body and dislodging the Rolaids and condoms from his pockets in the process. The State also presented evidence through witness testimony and forensic analysis of the handgun and spent shell casings that linked defendant to Brunner's shooting. As such, the State met its burden of showing each element of robbery with a dangerous weapon such that a jury could find from the evidence presented that defendant carried out his intent to commit an armed robbery of Brunner. *See Locklear*, 322 N.C. at 358, 368 S.E.2d at 383 ("If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." (citation omitted)).

*IV.*

In his fourth argument on appeal, defendant contends the trial court erred in allowing a witness to testify as to inadmissible hearsay statements. We disagree.

At the outset we note that defendant has failed to preserve this issue for appeal. This Court reviews an unpreserved error in a criminal case for plain error. *See Lawrence*, 365 N.C. at 512, 723 S.E.2d at 330.

The State proffered one of its witnesses to the trial court outside of the jury's presence, stating that the State would ask this witness to testify about defendant robbing Brunner in 2007 and Brunner engaging in a fist fight with defendant in 2008. The trial court, after considering the arguments presented by both parties, ruled that while testimony of the robbery would not be permitted, testimony about the fist fight would be permitted as both then-existing state of mind[2] and Rule 404(b) statements. When the State began questioning this witness as to his recollection of the fight between Brunner and defendant, defendant stated only that "I'll renew my objection." Defendant did not object when the witness later testified that when Brunner saw defendant at a gas station, Brunner "started to get real crazy" and began shouting, "That's him. That's who robbed

---

[2] Pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(3) (2013), statements concerning "the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed . . ." may be admitted by the trial court as exceptions to the hearsay rule.

me right there. That's him." As such, defendant's failure to object to the witness's testimony concerning Brunner's statements was insufficient to preserve this argument on appeal. *See State v. Golphin*, 352 N.C. 364, 439—40, 533 S.E.2d 168, 219 (2000) ("[A] general objection is "ineffective unless there is no proper purpose for which the evidence is admissible." (citations omitted)).

Defendant also asks this Court to review the trial court's admission of the witness's testimony for plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "To have an alleged error reviewed under the plain error standard, the defendant must "specifically and distinctly" contend that the alleged error constitutes plain error." *Lawrence*, 365 N.C. at 516, 723 S.E.2d at 333 (citations omitted). "[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error . . . .'" *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (citations omitted).

Defendant argues that the trial court's failure to issue a curative instruction and strike the witness's testimony as to Brunner's statements caused defendant "irreparable harm" and "said testimony represented a fundamental error requiring a new trial." Specifically, defendant contends that the admission of this testimony was prejudicial because this testimony could only be admitted for the purpose of demonstrating a prior bad act by defendant.  Defendant's argument is without merit, as it is clear from the trial transcript that the witness's testimony was admitted not to demonstrate a prior bad act but rather to show Brunner's then-existing state of mind.  Moreover, defendant has failed to show how the admission of this testimony amounted to a fundamental error requiring a new trial; given the evidence presented by the State throughout defendant's trial indicating that defendant shot, killed and robbed Brunner, we find the admission of this particular witness's testimony to be without error.  Defendant's fourth argument on appeal is overruled.

*V.*

Defendant's final argument on appeal contends the trial court erred in allowing a witness to testify regarding cell phone records.  We disagree.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2013). "Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case." *State v. Sloan*, 316 N.C. 714, 724, 343 S.E.2d 527, 533 (1986) (citation omitted). "[E]vidence tending to connect an accused with the crime" is relevant. *State v. Whiteside*, 325 N.C. 389, 397, 383 S.E.2d 911, 915 (1989) (citation omitted).

The State sought to admit the cell phone records of Taing's mother to corroborate Taing's testimony regarding cell phone calls she received from her mother the night Brunner was murdered. Defendant objected to the admission of these records on grounds that because the records belonged to Taing's mother, and Taing's mother did not testify as a witness at trial, the records were irrelevant. This objection was overruled by the trial court which admitted the records as business records.

Business records are made in the ordinary course of business at or near the time of the transaction and are admissible if authenticated by a witness familiar with them and how they are made. *State v. Wood*, 306 N.C. 510, 515, 294 S.E.2d

310, 313 (1982). The State sought to have the cell records admitted into evidence after having them authenticated by a witness who worked for Taing's cell phone carrier. Defendant's argument that Taing's mother needed to be a witness testifying at trial in order for the records to be admissible is without merit. The admission of business records into evidence does not require the person to whom the records refer be a witness at trial; rather, the exception requires that the records have been made in the ordinary course of business at or near the time of the transaction in question and be authenticated by a witness familiar with them and how they are made. *See id*. Here, the cell phone records were authenticated by a witness who worked for Taing's mother's cell phone carrier; the witness testified as to what data the records contained, including the times, phone numbers, and caller locations for all phone numbers associated with a particular cell phone account. As such, Taing's mother did not need to be a witness in order for these records to be properly authenticated and admitted into evidence. Accordingly, defendant's final argument is overruled.

Affirmed; no error.

Judges CALABRIA and GEER concur.

Report per Rule 30(e).